UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF KENTUCKY
Covington Division

| | |
|---|---|
| In re: <br><br> William Cook <br> Kathleen Cook <br> Debtors. | Case No. 10-21632 <br> Chapter 7 |
| In re: <br><br> Chaz Hill <br> Debtor. | Case No. 10-21683 <br> Chapter 7 |
| In re: <br><br> Robert Hill <br> Debtor. | Case No. 10-21879 <br> Chapter 7 |
| In re: <br><br> Leslie Renner <br> Debtor. | Case No. 10-21946 <br> Chapter 7 |
| In re: <br><br> Amy Fraley <br> Debtor. | Case No. 10-22151 <br> Chapter 7 |
| In re: <br><br> Misty Juarez <br> Debtor. | Case No. 10-22554 <br> Chapter 7 |
| In re: <br><br> Craig Campbell <br> Debtor. | Case No. 10-22561 <br> Chapter 7 |

| | |
|---|---|
| In re:<br><br>Rowena Hunt<br>  Debtor. | Case No. 10-22714<br>Chapter 7 |
| In re:<br><br>Rodney Kennedy, Jr.<br>  Debtor. | Case No. 10-22718<br>Chapter 7 |
| In re:<br><br>Jerry Nichols<br>  Debtor. | Case No. 10-22730<br>Chapter 7 |
| In re:<br><br>Molly Margolen<br>  Debtor. | Case No. 10-22811<br>Chapter 7 |
| In re:<br><br>Lawrence Hester<br>Barbara Hester<br>  Debtors. | Case No. 10-22812<br>Chapter 7 |
| In re:<br><br>Robin Morton<br>James Morton<br>  Debtors. | Case No. 10-22835<br>Chapter 7 |
| In re:<br><br>Justin Rabe<br>  Debtor. | Case No. 10-22989<br>Chapter 7 |

| | |
|---|---|
| In re:<br><br>Kimberly Thoman<br>  Debtor. | Case No. 10-23221<br>Chapter 7 |
| In re:<br><br>Larry Gregory<br>Dianna Gregory<br>  Debtors. | Case No. 10-23239<br>Chapter 7 |
| In re:<br><br>Eric Duke<br>  Debtor. | Case No. 10-23274<br>Chapter 7 |
| In re:<br><br>Barbara Wright<br>  Debtor. | Case No. 10-23290<br>Chapter 7 |
| In re:<br><br>Robert Stulz, Jr.<br>  Debtor. | Case No. 10-23370<br>Chapter 7 |
| In re:<br><br>Melanie Branham<br>  Debtor. | Case No. 11-20024<br>Chapter 7 |
| In re:<br><br>Timothy Strayer<br>  Debtor. | Case No. 11-20044<br>Chapter 7 |

| | |
|---|---|
| In re:<br><br>Ronald Hengehold<br>Martha Hengehold<br>  Debtors. | Case No. 11-20069<br>Chapter 7 |
| In re:<br><br>Eugene Wilson<br>Vickie Wilson<br>  Debtors. | Case No. 11-20153<br>Chapter 7 |
| In re:<br><br>Edward Ward<br>Cynthia Ward<br>  Debtors. | Case No. 11-20179<br>Chapter 13 |
| In re:<br><br>Gerald Sterling, Jr.<br>  Debtor. | Case No. 11-20180<br>Chapter 13 |
| In re:<br><br>Shirley Arnold<br>  Debtor. | Case No. 11-20255<br>Chapter 7 |
| In re:<br><br>Elisha Cooper<br>  Debtor. | Case No. 11-20261<br>Chapter 7 |
| In re:<br><br>Sherry Toms<br>  Debtor. | Case No. 11-20354<br>Chapter 7 |

| | |
|---|---|
| In re: | |
| Linda Johnson<br>  Debtor. | Case No. 11-20363<br>Chapter 7 |
| In re: | |
| Robert Deck<br>  Debtor. | Case No. 11-20398<br>Chapter 7 |
| In re: | |
| Brandon Rogers<br>  Debtor. | Case No. 11-20440<br>Chapter 7 |
| In re: | |
| Sharon Osborn<br>  Debtor. | Case No. 11-20441<br>Chapter 7 |
| In re: | |
| Melanie Willman<br>  Debtor. | Case No. 11-20442<br>Chapter 7 |
| In re: | |
| Ryanoneal Perez<br>  Debtor. | Case No. 11-20512<br>Chapter 7 |
| In re: | |
| Luzviminda Flores<br>  Debtor. | Case No. 11-20514<br>Chapter 7 |
| In re: | |
| James Saylor<br>  Debtor. | Case No. 11-20522<br>Chapter 7 |

| | |
|---|---|
| In re:<br><br>Amanda Franklin<br>    Debtor. | Case No. 11-20540<br>Chapter 7 |
| In re:<br><br>Kyle Tolle<br>    Debtor. | Case No. 11-20577<br>Chapter 13 |
| In re:<br><br>Michael Hester<br>Melissa Hester<br>    Debtors. | Case No. 11-20714<br>Chapter 7 |
| In re:<br><br>Charles Noland<br>    Debtor. | Case No. 11-20715<br>Chapter 7 |
| In re:<br><br>Elizabeth Ndiaye<br>    Debtor. | Case No. 11-20716<br>Chapter 7 |
| In re:<br><br>David Lake<br>Nancy Lake<br>    Debtors. | Case No. 11-20765<br>Chapter 7 |
| In re:<br><br>Charles Emery<br>Nancy Emery<br>    Debtors. | Case No. 11-20812<br>Chapter 7 |

MOTION OF THE UNITED STATES TRUSTEE TO SANCTION
CHARLES H. SCHAFFNER AND FOR ENTRY OF AN
ORDER TO SHOW CAUSE

### Notice of Hearing

**Please take Notice that this Motion will be heard by the
Court on July 19, 2011 at 2 p.m. in the U.S. Bankruptcy
Courtroom, 35 West 5th Street, Room 306, Covington, KY
41501.**

Daniel M. McDermott, United States Trustee, by counsel, moves this

Court to: (A) impose sanctions upon attorney Charles H. Schaffner pursuant

to its inherent powers; (B) enter an Order requiring Charles H. Schaffner to

show cause why he should not be disciplined pursuant to U.S. District Court

Local Rules 83.3(c) and 83.12; (C) impose sanctions against Charles H.

Schaffner pursuant to Fed. R. Bankr. P. 9011; and (D) direct disgorgement of

all fees and payment of an appropriate civil penalty pursuant to 11 U.S.C. §§

329 and 526. In support of this Motion, the United States Trustee states as

follows:

### Procedural Background

1.    Attorney Charles H. Schaffner is a member in good standing of the

Kentucky Bar and the bar of the United States District Court for the Eastern

District of Kentucky. He conducts his law practice from 105 Park Place,

Covington, Kentucky 41011.

2.    According to this Court's PACER website, 45 cases were filed since

June 2, 2010 using Mr. Schaffner's ECF account. *See* Exhibit A. Of these 45

cases, three were filed for debtor Jerry Nichols (10-21565, 10-21656, and 10-22730) and two were filed for debtor Barbara Wright (10-21595 and 10-23290).

3.    The United States Trustee has received numerous complaints from the panel trustees in the Covington division concerning Mr. Schaffner's cases. In addition, Mr. Schaffner filed a motion to dismiss on May 3, 2011 in *Osborn*, Case No. 11-20441, which stated that he "had a breakdown in the bankruptcy portion of his office" and had a law clerk who . . . filed actions while [Schaffner] was out of the office, embezzled money, and left taking [client] files." Doc. 17.

4.    As a result of these reports and the motion to dismiss in *Osborn*, the United States Trustee filed a Motion for a Rule 2004 Examination of Mr. Schaffner in that case on May 10, 2011. Doc. 20.

5.    The Court entered an Order on May 11, 2011 authorizing the examination of Mr. Schaffner, Doc. 23, and an examination was held on May 26, 2011.

**Facts**

6.    At some point before June 2, 2010, Schaffner entered into an arrangement with Leonard Bickers to prepare bankruptcy cases for Schaffner. Exhibit B (Transcript of Rule 2004 Examination) (hereinafter "Tr."), p. 32/17 to 32/23.

8

7.      Schaffner testified that he had known Bickers for at least eight years. Tr. 28/21 to 28/24. He met Bickers and his partner, Ed Lucas, through local politics. Tr. 28/25 to 29/22. Schaffner testified that he was aware that Bickers and Lucas had been convicted in federal court for credit card fraud. Tr. 29/23 to 30/17. Schaffner was also aware that Bickers and Lucas had "run into trouble" in the Southern District of Ohio[1] and Western District of Kentucky[2] because of their activities as bankruptcy petition preparers. Tr. 30/18 to 32/3. Schaffner was unaware of any enforcement actions against Bickers of Lucas in this Court.[3] Tr. 32/24 to 33/2.

8.      Schaffner had appeared for Bickers and Lucas on one occasion "sort of as a courtesy" in the Southern District of Ohio. Tr. 31/4 to 31/17. Approximately one year later, Bickers indicated to Schaffner that he would like to get back into "the bankruptcy business." Tr. 31/23 to 32/3. Schaffner agreed to take him on "because I knew he knew bankruptcy law" and "did a good job for people." Tr. 31/25 to 32/3. When asked how he knew this, Schaffner stated that he had seen his work, but curiously stated "I had also

---

[1]*In re Huber*, Case No. 09-12061, Doc. 31, and *In re Bates*, Case No. 09-12575, Doc. 25 (in agreed order, Bickers permanently "withdraws" as bankruptcy petition preparer in Southern District of Ohio); *In re Kendall*, Case No. 09-11421, Doc. 68 (Lucas enjoined from violating section 110).

[2]*In re Mindy Payne*, Case No. 09-33317, Doc. 42 (Bickers permanently enjoined from unauthorized practice of law).

[3]*But see McDermott v. Bickers (In re Sebree)*, Adv. Pro. 10-2018.

seen some things that—that didn't make any sense, and you could tell it was a nonprofessional that prepared it, things of that nature." Tr. 32/4 to 32/8.

9.    Schaffner, after reaching this understanding with Bickers, leased the second floor of his office building and furnished the space. Tr. 19/1 to 19/21, 32/4 to 32/16. This space had a separate entrance. *Id.* He also purchased the Best Case bankruptcy filing program. Tr. 32/14 to 32/16. The terms of the financial arrangement with Bickers "was somewhat fluid," but the agreed upon term was Schaffner would pay Bickers $100 per bankruptcy. Tr. 33/3 to 33/14. Schaffner often paid a slightly higher rate such as $110 as an incentive. *Id.* Schaffner paid Bickers a total of $7,130 during the course of their arrangement. Tr. 79/23 to 80/15. Schaffner treated Bickers not as an employee, but as a "1099 kind of person." Tr. 147/20 to 147/23.

10.    Bickers supplied his own personal computer, on which was loaded the Best Case software program purchased by Schaffner. Tr. 58/10 to 59/4. Schaffner also provided Bickers with his ECF login and password, and his office credit card information. Tr. 39/5 to 39/23. With this information, Bickers was able to file bankruptcy petitions without Schaffner's involvement using the Best Case software.

11.    Schaffner claimed at his 2004 examination that he initially reviewed the bankruptcy petition, statements and schedules before they were filed, but as of November 2010 he only spent at most 10 hours a week in the office

because of personal issues. Tr. 35/6 to 35/22. At this point, Schaffner claimed

that Bickers filed cases without his review. Tr. 37/20 to 38/6.

12.    Bickers carried out the initial client interviews and prepared the

bankruptcy petition, statements, and schedules. Tr. 39/24 to 40/22. He also

collected all funds from clients. Tr. 23/18 to 23/21. Schaffner claimed at the

2004 examination that he performed "meet and greet type thing[s]" with

clients, but did not always go over the draft bankruptcy petition with clients.

Tr. 41/14 to 42/8. He claimed he met with most of his clients before filing, but

he could present no documentation supporting this. Schaffner claimed he

could not locate the bankruptcy calendar maintained by Bickers. Tr. 18/13 to

21/1.

13.    Client receipts were not deposited in a trust account. Instead, all

checks were placed in the office safe and deposited in Schaffner's operating

account after the case was filed. Tr. 21/21 to 23/3. Schaffner admitted that he

did not have the combination to the office safe; knowledge of the combination

rests with Dan Cope, another non-attorney hired by Schaffner. Tr. 23/5 to

23/11.

14.    In addition to the initial client interview, and collecting funds from

Schaffner's clients to file bankruptcy, Schaffner stated that Bickers was

responsible for:

a.  notifying Schaffner of the 341 meeting date and time, Tr.

20/23 to 21/1;

b.  filing amendments, Tr. 86/23 to 87/9, 101/15 to 101/16;

c.  keeping contact with clients regarding financial

management counseling, *Id.*;

d.  sending letters to judgment creditors to stop

garnishments, Tr. 101/8 to 101/14;

e.  handling reaffirmation agreements, Tr. 100/23 to 100/25;

and

f.  handling loan modification requests. Tr. 198/12 to 198/14.

15.    Schaffner testified that he was unfamiliar with the requirements

contained in 11 U.S.C. §§ 526 to 528. Tr. 90/19 to 91/5. No written contracts

or representation, or any of the three mandatory disclosures set forth in 11

U.S.C. § 527(a)(2), 11 U.S.C. § 527(b), and 11 U.S.C. § 527(c) were located by

the United States Trustee in any of Schaffner's case files.

16.    Schaffner testified that he does not know how much money Bickers

collected from Schaffner's clients. Tr. 23/18 to 23/21. Bickers maintained a

receipt book, but Schaffner cannot find it. Tr. 23/22 to 24/2. While Schaffner

keeps copies of his deposit slips, he does not keep copies of the checks he

deposits. Tr. 158/12 to 158/21. The deposit slips also do not reflect in which

case the check applies. *Id.* Based upon this, Schaffner admitted that he could

12

not reconstruct what funds he received from his bankruptcy clients. Tr. 26/11
to 26/22.

17.    Schaffner indicated during his 2004 examination that certain Rule
2016 statements filed were incorrect, and could not state whether others
were correct. *See* Tr. 126/9 to 128/9 (*Flores*), Tr. 134/11 to 136/22 (*Franklin*),
Tr. 159/10 to 160/12 (*Michael Hester*), Tr. 160/13 to 162/4 (*Chaz Hill*), Tr.
162/5 to 163/16 (*Robert Hill*), Tr. 181/15 to 182/22 (*Osborn*), Tr. 183/24 to
184/15 (*Rabe*), Tr. 186/20 to 187/22 (*Rogers*), Tr. 188/16 to 192/11 (*Sterling*).
Given this uncertainty, and Schaffner's inability to reconstruct his accounts,
the United States Trustee has little confidence in the Rule 2016 statements
in Schaffner's cases.

18.    As set forth in greater detail below, Schaffner's representation in the
45 cases was not competent, and in some cases resulted in a client's loss of
assets or dismissal of the case.

19.    In the cases of *Deck*, *Lawrence Hester*, *Michael Hester*, *Noland*,
*Osborn*, and *Thoman*, it appears that the Debtors did not complete credit
counseling. Certificates were issued, and the United States Trustee's belief is
that the credit counseling was completed by Bickers impersonating the
Debtors. The United States Trustee's investigation is ongoing.

20.    In at least 11 cases, the Debtors signed their Voluntary Petitions
after filing. *See* Tr. 141/2 to 141/24 (*Lawrence Hester*); Tr. 137/14 to 138/4

13

(*Gregory*); Tr. 181/19 to 182/6 (*Osborn*); Tr. 201/22 to 202/7 (*Ward*); Tr. 165/7

to 166/3 (*Johnson*); Tr. UST 94 (*Lake*); Tr. 159/10 to 160/4 and UST 73

(*Michael Hester*); Tr. UST 41 (*Emery*); Tr. UST 75 (*Chaz Hill*); Tr. UST 19

(*Cook*); Tr. UST 124 (*Renner*). Therefore, the representation made by

Schaffner concerning the client's signature, as indicated by the "/s/" signature

was not true. In addition, the United States Trustee could not locate signed

copies of the petition in the case files of *Campbell* and *Tolle*.

21.    In seven cases, Schaffner incorrectly selected property exemptions,

by claiming both federal and state exemptions. *See Arnold*, Case No. 11-

20255; *Deck*, Case No. 11-20398; *Franklin*, Case No. 11-20540; *Lawrence*

*Hester*, Case No. 10-22812 (amendments); *Johnson*, Case No. 11-20363;

*Osborn*, Case No. 11-20441; *Toms*, Case No. 11-20354. In addition, Schaffner

incorrectly claimed Ohio state exemptions in the case of *Flores*, Case No. 11-

20514, and overstated exemptions in the case of *Juarez*, Case No. 10-22554.

While Schaffner usually selected state exemptions for his clients, upon

information and belief, they would have been better served by selecting

federal exemptions. *Compare, e.g.,* 11 U.S.C. § 522(d)(1) ($21,625 homestead

exemption) *with* Ky. Rev. Stat. § 427.060 ($5,000 homestead exemption).

22.    In the case of *Fraley*, Case No. 10-22151, Ms. Fraley filed a *pro se*

chapter 7 bankruptcy on August 10, 2011. Leonard Bickers is listed as the

bankruptcy petition preparer. Doc. 1. Schedule C as filed failed to list any

14

statute authorizing her exemptions. *Id.* As some point after the meeting of

creditors on September 16, 2011, Schaffner began representing Ms. Fraley.

Schaffner never corrected the exemptions. In response to trustee Craig

Kendrick's intention to sell the Debtor's 2009 Nissan Xterra because of an

improperly perfected lien, Schaffner sent a letter dated September 17, 2011

that states as follows:

> Dear Mr. Kendrick:
>
> This young lady was referred to me to resolve her problem
> with her Chapter 7 Bankruptcy. In reviewing the submitted
> paperwork, I have determined that the documents as presented
> placed her in the "out of the guidelines" for a Chapter 7 but
> when you look at her "means" test on page eight (8) it clearly
> states that the presumption of abuse does not arise and she
> should be able to effectuate a Chapter 7 discharge. If I am wrong
> on this can you please contact me so that we can discuss this
> more thoroughly.
>
> I think this would resolve the potential Chapter 13 situation
> and if we need to appear please advise and I will appear with
> her as her counsel of record at the next hearing if one is
> required.

Tr. UST 48. Schaffner testified that this letter "was attempting to get Craig

Kendrick to not take the car away." Tr. 129/10 to 131/5. He then filed a

motion to redeem (on three occasions), Doc. 16, 18, 21, which reflected a basic

lack of understanding of redemption, insofar as the relief requested was "an

order permitting the debtor to redeem said property by continuing to make

monthly installment payments per the contract with the debtor." *See* Doc. 16.

15

23. Schaffner's cases also reflect numerous failures to correctly file bankruptcy cases and associated pleadings. In 19 cases, Schaffner filed financial management certificates as credit counseling certificates. *See* dockets in *Wright I*, Case No. 10-21595, Doc. 15; *Chaz Hill*, Case No. 10-21683, Doc. 14; *Robert Hill*, Case No. 10-21879, Doc. 13; *Renner*, Case No. 10-21946, Doc. 8, 9; *Hunt*, Case No. 10-22714, Doc. 12, 13; *Kennedy*, Case No. 10-22718, Doc. 15, 16; *Nichols III*, Case No. 10-22730, Doc. 12; *Margolin*, Case No. 10-22811, Doc. 13, 14; *Lawrence Hester*, Case No. 10-22812, Doc. 12, 13, 14; *Morton*, Case No. 10-22835, Doc. 15, 16, 17, 18; *Rabe*, Case No. 10-22989, Doc. 15; *Gregory*, Case No. 10-23239, Doc. 14, 15, 16, 17; *Duke*, Case No. 10-23274 , Doc. 8, 9; *Wright II*, Case No. 10-23274, Doc. 11, 12; *Stulz*, Case No. 10-23370, Doc. 9, 10; *Branham*, Case No. 11-20024, Doc. 25, 26; *Strayer*, Case No. 11-20044, Doc. 14, 15; *Toms*, Case No. 11-20354, Doc. 13; *Johnson*, Case No. 11-20363, Doc. 13, 14.

24. In seven cases, Schaffner filed amendments (usually to Schedule C) that did not contain the signature of the Debtors under penalty of perjury pursuant to Fed. R. Bankr. P. 1008. *See* dockets in *Campbell*, Case No. 10-22561, Doc. 29, 31; *Morton*, Case No. 10-22835, Doc. 20, 22, 23; *Stulz*, Case No. 10-23370, Doc. 9, 10; *Johnson*, Case No. 11-20363, Doc. 15, 16; *Perez*, Case No. 11-20512, Doc. 11, 12; *Flores*, Case No. 11-20514, Doc. 11, 12; In one case, *Lawrence Hester*, Case No. 10-22812, Schaffner attempted to amend

Schedule C five times, all of which suffered from deficiencies and resulted in

entry of an Order disallowing all amendments and forbidding Schaffner from

filing amendments without the prior approval of the Court. Doc. 16, 17, 20,

21, 24, 33.

25.    Other errors in the preparation and filing of pleadings and other

documents include:

a.    In three cases, the Court entered orders of dismissal because

Schaffner failed to complete the filing. *Nichols I*, Case No. 10-21565,

Doc. 13; *Wright* I, Case No. 10-21565, Doc. 10; *Emery*, Case No. 11-

20812, Doc. 9.

b.    In *Nichols II*, Case No. 10-21656, Schaffner moved to dismiss

this filing "as an accidentally duplicated filing." Doc. 5.

c.    In *Fraley*, Case No. 10-22151, Schaffner filed a motion to redeem

that was overruled because it failed to serve a necessary party, failed

to give notice and opportunity for objections or a hearing date and

time, and failed to include a certificate of service. Doc. 16, 17.

Schaffner filed the motion again, but it was again overruled because it

failed to provide a hearing date and time. Doc. 18, 20. Schaffner filed

the motion for a third time which was apparently overruled on the

merits. Doc. 21, 27.

d.  In *Campbell*, Case No. 10-22561, the Court initially dismissed this case because Schaffner failed to timely correct the filing of amendments without the Debtor's signature and a certificate of service. Doc. 32. Schaffner then filed a motion to set aside the dismissal, but failed to include a proposed order. Doc. 36, 38. Schaffner refiled the motion with a proposed order, but the proposed order did not contain the language required by the Administrative Procedures Manual Section. Doc. 41, 42, 43. Ultimately, Schaffner filed an order that the Court granted. Doc. 44, 45.

e.  In *Kennedy*, Case No. 10-22718, the Court entered an Order to Show Cause because Schaffner failed to comply with an Order to Amend Schedule I to show the income of the non-filing spouse. Doc. 23.

f.  In *Lawrence Hester*, Case No. 10-22812, Schaffner filed a motion to "extend time to file amended pleadings and arguments" that contained a defective proposed order. Doc. 38, 39. Schaffner then submitted a replacement proposed order that was again defective. Doc. 41, 42.

g.  In *Branham*, Case No. 11-20024, Schaffner on three occasions filed motions to continue the 341 meeting where the proposed order failed to comply with the ECF guidelines. Doc. 12, 13, 15, 17, 19, 20, 22.

18

h.  In *Deck*, Case No. 11-20398, Schaffner filed a motion to operate
business and motion to hold hearing telephonically which were both
overruled for a variety of deficiencies. Doc. 9, 12, 14, 15. Schaffner did
not refile these motions.

i.  Finally, in *Osborn*, Case No. 11-20441, Schaffner filed a motion
to dismiss which was overruled because it did not provide proper notice
and opportunity for hearing and did not contain a certificate of service.
Doc. 18.

26.  The above errors demonstrate that Schaffner exercised little or no
supervision or control over Bickers. In addition, an utter lack of control over
Bickers is apparent by the fact that Bickers filed three chapter 13 cases for
Schaffner (*Ward, Sterling,* and *Tolle*) even though Schaffner had told Bickers
he did not want to file chapter 13 cases. Tr. 188/23 to 190/5. Schaffner
admitted that he never talked to Bickers about filing chapter 13 cases even
after he discovered the fact. Tr. 190/21 to 191/6.

27.  In addition to performing work for Schaffner, Bickers was also
retained to file bankruptcy cases for attorney Stephen Dasenbrock in Ohio
and Kentucky. Tr. 51/14 to 53/7. Schaffner stated that Bickers was permitted
to use Schaffner's Best Case software and ECF login (for cases in Kentucky).
Dasenbrock was supposed to pay Bickers and contribute something toward
Schaffner's overhead. *Id*. It appears that one Kentucky case, *Thoman*, Case

19

No. 10-23221, was filed for a Dasenbrock client using Schaffner's ECF login.

Tr. UST 141. Bickers also apparently filed cases for Dasenbrock in Ohio

using Dasenbrock's ECF login. The Voluntary Petitions in these cases reflect

Mr. Dasenbrock's signature with the law firm of "Schaffner Law Firm &

Associates, 105 Park Place, Covington, KY 41011." *See, e.g., Fyffe*, Case No.

10-18324 (Bankr. S.D. Ohio).

28.   In spite of the numerous problems Schaffner experienced in the filing

of his bankruptcy cases, it appears that any impetus to correct these serious

problems came from Dasenbrock, not Schaffner. According to Schaffner,

Dasenbrock confronted Bickers in person about Ohio filings made without

authority on or about March 30, 2011. Tr. UST 5, at S000034.  Dasenbrock

requested proof, and asked Dan Cope in Schaffner's office to confirm. *Id.*

When Cope spoke to Bickers on March 30, Bickers apparently became angry

and said something to the effect of "I'm out of here." *Id.* Bickers never

returned to the office. *Id.*

29.   After this incident, Schaffner made no effort to protect client files. On

Monday, April 4, 2011, Ed Lucas entered the second floor office and removed

Mr. Bickers' computer. Tr. 46/6 to 48/8. Schaffner admitted that Bickers'

computer contained client information such as client social security numbers

and birth dates. Tr. 58/10 to 59/24.

## Argument and Authorities

### *The Court's Authority to Sanction and Discipline*

30.   This Court possesses the inherent authority to sanction and

discipline attorneys who appear before it. *Chambers v. NASCO*, 501 U.S. 42,

43 (1991). This power is not displaced by express sanctioning provisions such

as Fed. R. Bankr. P. 9011. *First Bank of Marietta v. Hartford Underwriters*,

307 F.3d 501, 510-513 (6th Cir. 2002). Because of their potency, inherent

powers must be exercised with restraint and discretion. *Chambers*, 501 U.S.

at 44.

31.   District Court LR 83.3(a) states that any attorney practicing before

the Court is subject to discipline for unprofessional conduct in a matter

pending before the Court. This Rule is applicable in Bankruptcy Court

because it is a unit of the District Court and has been referred all matters

arising under, arising in, or related to Title 11 cases. LR 83.12. A motion or

other action to sanction an attorney is a core proceeding. *See In re Memorial

Estates, Inc.*, 950 F.2d 1364, 1370 (7th Cir. 1991); *In re Emergency Beacon

Corp.*, 52 B.R. 979, 987 (S.D.N.Y. 1985).

32.   District Court LR 83.3 dictates the procedure to be followed in

matters of attorney discipline. If it appears to the Court, after reviewing the

instant motion, that Schaffner "has violated the rules of the Kentucky

Supreme Court governing professional conduct or is guilty of other conduct

21

unbecoming an officer of the Court," the Court may order Schaffner to show

cause within a specified time why he should not be disciplined. LR 83.3(c).

33.   As set forth below, Schaffner violated numerous rules of the

Kentucky Supreme Court governing professional conduct, violated Fed. R.

Bankr. P. 9011, and is subject to disgorgement and the payment of civil

penalties pursuant to 11 U.S.C. §§ 329, 526, 527, and 528.

***Schaffner failed to adequately supervise a nonlawyer assistant and
assisted a nonlawyer in the unauthorized practice of law: SCR
3.130(5.3, 5.5)***

34.   Schaffner, as sole practitioner who employed Bickers, was required to

engage in reasonable efforts to ensure that Bickers' conduct was "compatible

with the professional obligations of the lawyer." SCR 3.130(5.3(b)). Schaffner

failed to exercise any effective oversight over Bickers. He provided Bickers

with the software, ECF login and password, and credit card information to

allow Bickers to file petitions without oversight. Bickers collected all client

fees. He placed him in an upstairs office with a separate entrance. Schaffner

admitted that starting in November, he spent less than 10 hours a week in

the office.

35.   Schaffner also failed to take effective action against Bickers for his

numerous deficiencies. Bickers filed chapter 13 cases for Schaffner without

his permission, and Schaffner did not address this with Bickers. Opposing

counsel in the *Duke* case sent Schaffner a letter where he stated that

"[Bickers] informed me that he filed this Motion [to Extend Time], without your review, after discussing the matter with you." Tr. UST 35. Schaffner testified that he actually did not authorize this motion but stated that the unauthorized filing referenced in the letter did not "impact me." His email in response to the letter reflects only a concern over Bickers hanging up on the attorney. Tr. UST 36. The email also claimed that Schaffner "dock[ed] [Bickers'] pay for his rudeness to attorneys." *Id*. In response to questioning, Schaffner stated "Actually, it probably wasn't docked down. He probably just made a straight 100 versus 110 or 125, something like that." Tr. 118/10 to 118/13.

36.    Schaffner's failure to take prompt and direct action—such as terminating Bickers—operates as a ratification of the acts and omissions of Bickers. *See Gregory v. Kentucky Bar Association*, 151 S.W. 3d 31, 32 (Ky. 2004) (ratification when attorney fails to take remedial action).

37.    In fact, the record is clear that Schaffner did not engage in any *direct* supervision of Bickers at all. Bickers was an independent contractor paid on a per case basis. Bickers was responsible for the initial client meeting and entered all information in Best Case. Schaffner, at best, conducted "meet and greet" meetings before filing. In effect, Bickers continued as a bankruptcy petition preparer, and continued to violate the Bankruptcy Code. *See* 11 U.S.C. § 110(e) (prohibition on providing legal advice).

38.  The net result of Schaffner's association with Bickers was to assist

Bickers in his unauthorized practice of law, which violated SCR 3.130(5.5(a)).

### *Schaffner improperly shared legal fees with a nonlawyer: SCR 3.130(5.4)*

39.  Schaffner testified that he agreed to pay Bickers $100 per

bankruptcy. Schaffner also stated that "sometimes I gave him a little more to

try to get that incentive going." Tr. 33/18 to 33/23.

40.  This arrangement violated SCR 3.130(5.4), which states that a

lawyer shall not share legal fees with a nonlawyer. In the leading case of

*Bolen v. Crowe (In re Holmes)*, 304 B.R. 292 (Bankr. N.D. Miss. 2004), the

Court had before it a consumer bankruptcy attorney who paid bonuses to

nonlawyer staff as incentives (a) when the clients paid at least $300 and

executed their retainer agreements, (b) when the clients completed and

returned their bankruptcy questionnaires, and (c) when the clients signed

living wills/durable powers of attorney. *Id*. at 294.  The Bankruptcy Court

found that the arrangement violated Mississippi's version of Rule 5.4:

> This practice is not identical to the payment of salaries. Rather,
> it is a payment to motivate and encourage specific events. The
> arrangement conveys a pecuniary interest to the non-lawyer
> employee that is directly dependent on a decision that the client
> is called upon to make.

*Id*. at 297-98. *See also In re Bass*, 227 B.R. 103, 109 (Bankr. E.D. Mich.

1998) (payment of legal assistants based upon weekly total of

bankruptcy cases filed by office violated 5.4); In *re Hear*, 755 N.E.2d

24

579 (Ind. 2001) (debtor collection law firm violated 5.4 when it agreed

to pay 40% of amounts collected to nonlawyer who solicited clients).

41.   A similar problem is present regarding Schaffner's arrangement with

Bickers. No salary was paid; Bickers was compensated based upon the

decision of the client, *i.e.*, whether to file for bankruptcy relief. If no

bankruptcy petition was filed, Bickers would not be compensated for his

work.

### Schaffner did not properly handle client funds: SCR 3.130(1.15)

42.   Schaffner also utterly disregarded his duties as a fiduciary for client

funds. Rule SCR 3.130(1.15) is clear regarding an attorney's duties in

handling client funds:

> (a) A lawyer shall hold property of clients or third persons that
> is in a lawyer's possession in connection with a representation
> separate from the lawyer's own property. Funds shall be kept in
> a separate account . . . . Complete records of such account funds
> and other property shall be kept by the lawyer and shall be
> preserved for a period of five years after termination of the
> representation.
>
> (b) . . . upon request by the client or third person, [the lawyer]
> shall promptly render a full accounting regarding [property in
> which a client or third person has an interest].
>
> *   *   *
>
> (e) Except for non-refundable fees as provided in 1.5(f), a lawyer
> shall deposit into a client trust account legal fees and expenses
> that have been paid in advance, to be withdrawn by the lawyer
> only as fees are earned or expenses incurred.

25

43. As set forth above, Schaffner's handling of client funds ignored this rule. Checks were stored in an office safe (in which he lacked the combination) and not deposited until a case was filed. Schaffner cannot argue that the fees were non-refundable; no signed "non-refundable retainer fee agreement" exists in these cases. *See* SCR 3.130(1.5(f)) (requirements for non-refundable retainer).

44. Schaffner's multiple violations of this rule are further compounded by his inability to reconstruct what amounts he received from his clients. Given his general lack of competence in maintaining client funds, Schaffner should not be trusted with the responsibility of obtaining this information from his clients.

### *Schaffner did not competently represent his clients: SCR 3.130(1.1)*

45. By abdicating control of his bankruptcy cases to Bickers, Schaffner failed to competently represent his clients. *See In re Davila*, 210 B.R. 727, 731-32 (Bankr. S.D. Tex. 1996) (delegation of almost all client contact and pleading preparation by attorney to non-attorneys "guarantees that his clients receive very little, if any, accurate legal advice"); *Columbus Bar Association v. Flanagan*, 77 Ohio St.3d 381, 674 N.E.2d 681 (Ohio 1997) ("counseling of a client in financial matters, particularly about . . . [bankruptcy], is a serious matter that deserves the attention of a qualified attorney"). As set forth above, in numerous cases exemptions were

26

improperly claimed. In the case of *Fraley*, the debtor was forced to surrender her automobile to the trustee due to the failure of Schaffner to choose the federal exemptions, and due to his failure on three occasions to properly file a motion to redeem. The only conclusion to be drawn from this failure, his testimony regarding the redemption process, and his nonsensical letter to the trustee, is that Schaffner was not competent to advise Ms. Fraley regarding bankruptcy and exemption law.

46.   As set forth in the Facts, *supra*, Schaffner also exhibited a lack of competence as evidenced by the Clerk's repeated correction of his ECF filing, and the Court's repeated rejection of motions and orders that did not comply with due process and this Court's Local Rules.

47.   This lack of competence results in large part from his inadequate supervision of Bickers.

***Schaffner filed Voluntary Petitions that violated his duty of candor to the Court and lacked evidentiary support: SCR 3.130(3.3) and Fed. R. Bankr. P. 9011***

48.   As set forth above, in at least 11 cases Schaffner filed petitions that had not been signed by his clients. This Court has adopted Electronic Case Filing, Standing Order dated July 25, 2002, and Schaffner is a registered ECF user in this Court. In its July 25, 2002 Standing Order, the Court directed the Clerk to establish practices and procedures for ECF filing in an Administrative Procedures Manual. This Manual states:

> *Electronic Filing Constitutes Signatures and Certification.* The
> use of the log-in and password of the Filing User to
> electronically file any petition . . . shall constitute the signature
> of that Filing User . . . for purposes of . . . [Fed. R. Bankr. P.
> 9011]. . . . Use of the log-in and password shall also constitute
> certification by the Filing User, that (1) all persons indicated to
> have signed the document have actually executed the original
> prior to electronic filing. . . .

Administrative Procedures Manual, II(G)(1).

49.    Schaffner violated Fed. R. Bankr. P. 9011 by falsely representing to
the Court, via the "/s/" signature of the Debtors, that they had signed their
petitions, when they had not in at least 11 cases. *See In re Harmon*, 435 B.R.
758 (Bankr. N.D. Ga. 2010) (violation of Rule 9011 where original file
documents unsigned by clients but filed via ECF). Because this violation
involved the filing a petition, the 21 day "safe harbor" does not apply. *See*
Fed. R. Bankr. P. 9011(c)(1)(A).

50.    Schaffner also violated his duty of candor to this Court under SCR
3.130(3.3) by making false statements of fact that his clients (in at least 11
cases) had signed their petitions before filing.

***By failing to provide his clients with certain mandatory disclosures
and a signed written contract, Schaffner misrepresented by material
omission the services he would provide his clients, and the benefits
and risks of being a debtor: 11 U.S.C. § 526***

51.    Schaffner is a Debt Relief Agency as that term is defined in 11 U.S.C.
§ 101(12A). As a Debt Relief Agency, he was required to provide a "clear and
conspicuous written notice" to his clients no later than three business days

28

after first offering to provide bankruptcy assistance services. 11 U.S.C. § 527(a)(2). This notice provided warnings to bankruptcy clients about the need to provide complete and accurate information in their cases, information concerning valuation, information concerning current monthly income and disposable income, and information concerning the possibility of audit. *Id*. Schaffner failed to provide this information to his clients.

52.    He was also required to provide his clients with a form statement entitled "IMPORTANT INFORMATION ABOUT BANKRUPTCY ASSISTANCE SERVICES FROM AN ATTORNEY OR BANKRUPTCY PETITION PREPARER." 11 U.S.C. § 527(b). Schaffner failed to provide this information to his clients.

53.    Finally, Schaffner was required to provide his clients no later than five business days after he first provided bankruptcy assistance a signed written contract with the client. 11 U.S.C. § 528(a). Schaffner failed to provide such a contract to his clients.

54.    By violating these provisions, all agreements between Schaffner and his clients are void, and Schaffner is liable to his clients for all fees collected, for actual damages, and for any attorneys' fees. 11 U.S.C. § 526(c)(1)-(2).

55.    Schaffner, by omitting these important disclosures, also misrepresented the services he would perform and the benefits and risks of bankruptcy. 11 U.S.C. § 526(a)(3). Therefore, the Court may also enjoin

Schaffner from future violations and impose an appropriate civil penalty. 11

U.S.C. (c)(5).

### Appropriate discipline and sanctions for Schaffner's repeated violations of the Kentucky Rules of Professional Conduct, the Bankruptcy Code, and Fed. R. Bankr. P. 9011

56.    The United States Trustee believes that Schaffner has engaged in serious misconduct in his cases. His misconduct is compounded by his failure to take prompt corrective action against Bickers, and his failure to account for client receipts. In a number of cases, Schaffner's failure to properly supervise Bickers and manage his cases has resulted in dismissal. In these circumstances, the United States Trustee believes it would not be an abuse of discretion to disbar Schaffner from appearing before this Court.

57.    At a minimum, Schaffner should be required to disgorge all fees collected during his association with Bickers. Based upon the 2016 statements filed (which are not reliable), Schaffner billed a total of $33,124. Given this uncertainty, the United States Trustee believes Schaffner should be held to this number, while providing notice and opportunity to all clients to prove a higher number, and to prove actual damages if incurred. Schaffner should be required to bear all costs of this resolution procedure, including attorney's fees should the Court appoint an attorney to manage this procedure.

58. The primary concern of the United States Trustee is to provide relief to the victims of Schaffner's misconduct, and to protect the integrity of the system. If Schaffner can provide adequate relief to his victims, the United States Trustee respectfully requests that the Court consider awarding the United States Trustee an adequate civil penalty for Schaffner's violations of 11 U.S.C. § 526.

*   *   *

WHEREFORE, the United States Trustee respectfully requests that this Court enter an Order:

1. Requiring Schaffner to Appear and Show Cause why he should not be disciplined pursuant to Dist. Ct. LR 83.3 based upon the factual recitation contained in this motion, and that said discipline may include disbarment from this Court;

2. Scheduling the United States Trustee's Motion for Sanctions for an evidentiary hearing, preferably at the same time as the hearing on the Rule to Show Cause; and

3. Requiring Schaffner to respond in writing to this Motion prior to the hearings set on the Order to Show Cause and to impose sanctions.

Dated: June 15, 2011

**Daniel M. McDermott**
United States Trustee
By Counsel

*/s/John L. Daugherty*
John L. Daugherty
Assistant U.S. Trustee
100 East Vine St., Suite 500
Lexington, KY 40507
(859) 233-2822

### Certificate of Service

This is to certify that a copy of the foregoing was served on June 15, 2011: (1) electronically via CM/ECF on those parties who receive electronic notice in this case, and (2) via first class mail postage pre-paid on:

Charles H. Schaffner
105 Park Place
Covington, KY 41011

Barbara Wright
170 Pine Lake Drive
Erlanger, KY 41018

Chaz Hill
115 Newman Avenue
Fort Thomas, KY 41075

Leslie Renner
846 Oak Street, #1
Ludlow, KY 41016

Craig Campbell
2641 Dixie Highway
Lakeside Park, KY 41017

Rodney Kennedy, Jr.
734 Eubanks Rd.
Crescent Springs, KY 41017

Jerry Nicholas
2525 Ritchie Street
Ft. Mitchell, KY 41017

William & Kathleen Cook
2525 Dale Court
Ft. Mitchell, KY 41017

Robert Hill
6 Juarez Ct.
Ft. Mitchell, KY 41017

Misty Juarez
2522 Warren Street
Covington, KY 41014

Rowena Hunt
6514 Sugar Tree Drive
Independence, KY 41051

Lawrence & Barbara Hester
214 West 20th Street
Covington, KY 41011

Molly Margolen
303 Highway Avenue
Ludlow, KY 41016

Justin Rabe
330 Barley Circle
Crittenden, KY 41030

Larry Gregory
3754 Lipscomb Road
Latonia, KY 41015

Robert Stulz, Jr.
332 Howard Street
Ludlow, KY 41016

Timothy Strayer
507 Oak Hill Court
Fort Wright, KY 41011

Eugene & Vickie Wilson
141 East 41st Street
Latonia, KY 41015

Edward Ward
1823 Liberty Ridge Road
Falmouth, KY 41040

Shirley Arnold
417 East 16th Street
Covington, KY 41011

Sherry Toms
167 Key West Road
Crittenden, KY 41030

Robert Deck
5258 Foxdale Court
Independence, KY 41051

Robin & James Morton
101 Arrowhead Drive, Apt. 2
Williamstown, KY 41097

Kimberly Thoman
1680 Park Road
Fort Wright, KY 41011

Eric Duke
22 Beechwood Place
Dayton, KY 41074

Melanie Branham
6425 Deer Meade Drive
Florence, KY 41015

Ronald & Martha Hengehold
194 Burgess Lane
Florence, KY 41042

Gerald Sterling, Jr.
3870 Petersburg Road
Burlington, KY 41005

Cynthia Ward
1823 Ridge Road
Falmouth, KY 41040

Elisha Cooper
1812 Eastern Avenue
Covington, KY 41014

Linda Johnson
P. O. Box 399
Butler, KY 41006

Sharon Osborn
50 West 28th Street
Latonia, KY 41015

Brandon Rogers
50 West 28th Street
Latonia, KY 41015

Luzviminda Flores
2489 Hillard Drive
Hebron, KY 41048

James Saylor
260 Spillman Drive
Dry Ridge, KY 41035

Kyle Tolle
3 Woodknoll Drive
Independence, KY 41051

Elizabeth Ndiaye
191 Alexandria Drive
Latonia, KY 41015

David & Nancy Lake
1335 Cairns Court
Independence, KY 41051

Amy Fraley
1607 Amsterdam Rd.
Ft. Wright, KY 41011

Melanie Willman
812 Oak Street
Ludlow, KY 41016

Ryanoneal Perez
2489 Hillard Drive
Hebron, KY 41048

Amanda Franklin
6060 Southpointe Dr.
Burlington, KY 41005

Michael & Melissa Hester
1257 Cynthiana Court
Independence, KY 41051

Charles Noland
727 Edgecliff Road, #B4
Covington, KY 41012

Charles & Diane Emery
206 Applewood Drive
Ft. Mitchell, KY 41017

*/s/ John L. Daugherty*
John L. Daugherty

34